Submission will hear Outlaw. Good morning, may it please the court. I'm attorney Raymond Regatte. I represent Tylan Outlaw. Outlaw's appeal rests on two legal standards. First is the test for deliberate indifference in our circuit, and the second is the summary judgment standard. To prove deliberate indifference Outlaw needs to show two things. One, that Hartford was on notice of a pattern of police misconduct, and second, that Hartford failed to take appropriate action to protect a violation of Outlaw's right to be free of excessive force. Some cases talk about the third test as being causation, but the Jones combines them in that second element. So, summary judgment asks whether Outlaw was able to put forward some evidence of a material dispute of fact. How far back, how far back before December 2004 should we look for evidence to substantiate your Monell claim? Well, I think that we could, we can simplify this by, if we examine the notice first, we could go back to, let's say 1999, because Glendez is the first notice that Hartford has that is an order of a federal judge saying that there is a pattern of misconduct that I have in front of me, she itemizes this, and I'm looking at I'm looking at lists from, I believe, 1998 to 2001. You have allowed these cases to molder in gray, you don't investigate them, and you've sent a very bad signal to law enforcement officers in your city. Glendez is decided in 2003, Mr. Outlaw is beaten on December 17th of 2004. But then we also have the significant number of both lawsuits and non-suit complaints that were presented to the district judge in our case. We included lawsuits and non-suit complaints that went back to 1998, but I narrowed those down in my reply brief to the court to just include the period from 2001 to 2004. So certainly Hartford has notice of an immediate problem. But then there's a third notice. The third notice is the June 30th, 2004 order. The order issued by Judge Burns in the Cintron case, this isn't the contempt finding, this is the order telling them you must do three things because you have a problem. One, you must hire eight investigators to clear up a very bad backlog of uninvestigated cases. Two, you must follow reasonable timelines in investigating and closing these cases, either taking action or making determinations that there's been no misconduct. And then third, you must require at least summary reports from the investigators, the internal investigators that are going over these internal affair complaints. Now we go to the failure to take appropriate action because Hartford didn't take appropriate action and it's why we're here today on this particular issue. The contempt order or findings made by Judge Burns are issued in 2007 based on the extensive fact findings of Special Master Richard Bader. But what we know from this very detailed court order is that Hartford didn't begin to cure the problem until two months after Tylan Outlaw had his right kneecap broken and was dragged 62 feet with a broken knee. When was the, there's some evidence isn't there of efforts to improve handling of citizen complaints of excessive force, when did that start to happen? Your Honor, I'm sorry, I didn't understand. Aren't there evidence of the Hartford Police Department responding, trying to improve the handling of... Yes. But that doesn't, but that does not begin until two months, around two months after Mr. Outlaw was beaten. And that was, I understand in my sister's brief, well look, you know, we did take care of the problem. And you know, that's interesting because Judge Burns found that the city of Hartford was in contempt but issued no sanction. Because she couldn't issue a sanction. And we understand that. But there was a consequence to that contempt. And the consequence is that it opened the door to a Menil claim. And that's it. If this case does not present enough facts to move forward on a Menil claim, I don't know if we have a deliberate and different standard in our circuit. Could you move on to the qualified immunity question? Yes, thank you, Your Honor. With respect to qualified immunity, a little unusual, but we all agreed to allow Judge Crawford to make both fact findings and findings of law. With respect to qualified immunity, those findings are detailed. He tells you what happened in this case. And it's consistent with the jury's specific finding that the officer used excessive force. As I understand it, you're contending that we should review the district court's denial of qualified immunity for Officer Alan DeNovo. Did I understand that? No, no. I think you may be confusing Mr. Crawford. On the wrong side, right? Yes, right. That's the cross-appeal. So we're satisfied with the trial judge's findings on qualified immunity. Can I turn your attention back to the Menil claim with the presider's indulgence for just a minute? Yes, Your Honor. Essentially, and help me understand your position better if I'm misunderstanding something, your argument is that the police department should have conducted, was not conducting rigorous and timely review of citizen complaints. That's part of your argument. That's a major part. But to make out a Menil claim, you have to show that the municipality had noticed that that inaction will cause constitutional violations. And as you're well aware, there are many cities across the country that may, in particular periods in time, have backlogs of citizen complaints, not have the best and efficient processing of citizen complaints. So help me understand what the connection is between inadequate processing of citizen complaints and the notice of the municipality that it will result in constitutional violations, particularly excessive force violations. I thought there were two pieces of that puzzle that are brought to our attention. First, the plaintiff's class in Cintron in a letter to the court, actually a letter to the city, said, you know, this backlog is so bad, there is no review process. You're not taking it seriously and you're setting a dangerous example to officers. It's just a matter of time before somebody is a victim of constitutional misconduct, excessive force. Secondly, Judge Arterton herself indicates that in the Glendez decision, she makes that connection, the causal connection. And I want to be clear, imagine this, if we can, let's suppose a room that's a connecting room with two doors. Summary judgment is the first door is the gatekeeper of that door is the trial court itself, obviously. And so I'm not necessarily here to say, although I believe if this gets to a jury, they're going to find Hartford liable. But we're not here to look at whether we're going to succeed on that issue at trial if the evidence is enough to take us beyond a fair preponderance. It's just, is there enough here to take this to a jury? My time is running out, but if I may just conclude with my policy argument. I had the pleasure earlier this year to read Professor Amar and Adam's book. It's a lovely little book, it's a primer on the Bill of Rights. And they spent some time, only a few pages, but it's jurors as political participants. And I kind of bollocksed it up, I thought in my reply, I was under the gun and I'm just not that skilled a writer. But the public policy concerns here are just that. It is the public that needs to make these decisions as to whether or not, and given the timeliness, and again what's going on nationally, and I realize police officers have a very tough job. This isn't about picking on police, but there must be review. And the civilian review process in Hartford was very broken. And I do think that even though perhaps it does not have as much gravity, if you go back and look at that report from 1994, it's shocking. And I think it speaks volumes that Hartford doesn't even comply with its own municipal ordinance. They are required to have an annual report by that commission, the Civilian Review Board, to annually report to the mayor and the city council, the policy makers in that city, the number of complaints, what they're doing to address these complaints, settlement figures, to put this information in some meaningful form, okay, to keep an eye on the police. And if you don't do any of that, then what it makes it clear is that they're able to hide behind this, well, we don't keep statistics on anything. And I thought that was shocking. And I thought it was shocking that the chief of police, when we deposed him, stand-up guy, right, didn't bother to keep track of the Form 60 Use of Force reports. And our expert was shocked at that as well. His report speaks volumes. And so, thank you. Good morning, Your Honors. William J. Melley, M-E-L-L-E-Y, on behalf of Officer Mike Allen. We're here challenging the court's denial of the qualified immunity. I'd like to point out three separate factors that appear in the record, but I just want to highlight. Number one, when the court's decision on the qualified immunity is reviewed, one of the fascinating things to keep in mind is that there was originally a claim for punitive damages. And the decision almost speaks of something that sounds punitive. At the conclusion of the evidence of the entire case, the court struck the claim for punitive damages. That was not appealed. That is not before the court. It's just a part of the history of the case. Secondly... Could you go to the Monell claim? Could you go to that? I'm not addressing the Monell. Okay. Go ahead. Your colleague is talking about it. Yes. My colleague is going to talk about it. Yes, that's why I have limited time. The second point is that if we're going to analyze an excessive force claim, one of the things that the plaintiff testified to was that when he was on the ground in the fetal position, Detective Gordon kicked him in the face. That's pretty excessive. However, the jury did not buy it at all because the verdict on behalf of Detective Gordon was in his favor. The jury had to disregard the plaintiff's testimony. Not entirely. The jury is entitled to believe parts and disbelieve parts of any witness's testimony. Absolutely. But the essence of the claim against Detective Gordon was several kicks when he's just standing there and the kicking in the face when he's down. Anyway, the jury found in favor of Detective Gordon. The other element that comes in here... I mean, doesn't our precedent discourage speculation as to reasons for a jury's verdict? Yes, but we do have evidence of actual conduct by Detective Gordon. I'm just pointing it out as a factor. The other thing is the number of other officers that appeared on the scene and the plaintiff goes through that in the reply brief as to how many other people are there participating in this. Officer Allen testified as to what he did and what he didn't do. He responded to a situation. I would submit when the analysis starts, contrary to what Judge Crawford did, you have to begin when Officer Allen sees and hears something in front of him. As to what happened before that, which Judge Crawford spends a lot of time going through, there's no evidence that Officer Allen was aware of any of that. What Officer Allen sees is an officer in trouble and he responds. He responds in a manner that he thought was appropriate. This gets into the verdict form because the way the charge was set out, and this is all based upon the request of the plaintiff, at the end of the day maybe there's some confusion there. However... Did you object to the verdict form? No. Could you have submitted special interrogatories to the jury? We had an extensive charging conference on that and the end of the day, the way the court presented the problems dealing with the state law claim, I felt was enough. No, nothing specific was submitted. However, that state law claim of the assault and battery gives rise to the question, okay, we know that there's force used. The question is, is it unlawful? The Connecticut statute that the court specifically incorporated says that if an officer is out using force to defend a third party, then that conduct is excused. That would seem to imply that directly that the jury found that the conduct was qualified immunity. Isn't it possible that the jury defined that outlaw... Isn't it possible to say that Allen is not liable for assault, but that there was excessive force? There can be excessive force, but it can be excused if it's lawful. We get into the fine point. There's a lot of cases that say it's not a good idea to submit all three theories. Here we did submit all three theories and here we do have that extra factor of the lawful exercise of force, even though it may be excessive. Couldn't the verdict just be inconsistent? So Connecticut law permits the use of force reasonably believed to be necessary to the defense of others tailored to the particular circumstances. So it might just be that the verdicts are inconsistent and you seem to be inviting us to speculate about what happened. No, because if the common law is based upon lawful conduct, even though it might be excessive, that gives rise to the qualified immunity defense. Isn't that an oxymoron? Lawful excessive force? But that's what the... If it's excessive, it violates the Constitution. Well, it can be... Therefore, it's not lawful. No, I believe the Stevenson case talks about splitting up that oxymoron, as Your Honor referred to it, in that there can be conduct which is excessive and which is not a violation of the Constitution. The last point is the law clearly established. This is a department-issued baton with which the officer is trained and the court found a case that he said should have put the officer on notice that it was inappropriate except it's four years post-incident. If you could help me understand something. The district court found facts, right, based on the trial testimony and admitted exhibits, correct? Yes. So shouldn't we review the court's factual findings for clear error? I believe it's a de novo review because we have to begin with... Yes, we agreed that the court could make its determination of facts, but it has to start with the jury verdict. And the jury verdict... That's why I say the jury found in favor of Detective Gordon, but he spends how many pages going over what Detective Gordon did, who swore who... He talks about a minor traffic accident. I mean, that has nothing to do with the incident. We have... The analysis has to begin with Officer Allen seeing the situation unfold before him. Thank you. Thank you. Good morning, Your Honors. Natalie Fiola Guerreri. I represent the City of Hartford in defense of the district court's grant summary judgment in its favor. As a preliminary matter, if Officer Allen is successful on this cross-appeal and is found to be entitled to qualified immunity because the right allegedly violated was not clearly established, then outlaw's appeal of the grant summary judgment in the city's favor should be dismissed because outlaw's deliberate indifference claim against the city requires that Allen violate a clearly established constitutional right. The case of Towns versus City of New York is set in page one of my brief for that position. And although the plaintiff originally alleged that the city was deliberately indifferent based upon a municipal policy customer practice of failing to adequately train its police officers, including these officers, the plaintiff abandoned that claim and essentially had their expert admit that in light of the overwhelming undisputed evidence of the training and the adequacy of the training the City of Hartford provides its police officers, that that claim was deemed abandoned. The plaintiff here does not appeal the decision of the court in granting summary judgment on the basis of the failure to train claim. A failure to supervise. That is correct, Your Honor. The plaintiff here alleges that, and taken in the light most favorable to the plaintiff, the evidence, the court found that the evidence the plaintiff submitted in opposition to summary judgment was simply insufficient to establish that there was a policy customer practice by the City of Hartford that rose to the level as set forth in the circuit, which is a very high standard Wasn't that made difficult by the fact that, correct me if I'm wrong, that the City didn't provide data of citizen complaints in the resolution for the periods between 2001 and 2005? No, that's not correct, Your Honor. The court was never presented. That data were presented? The plaintiff never submitted in evidence in opposition to summary judgment any evidence that would establish that there was a consistent failure to supervise. That's not my question. Did the City provide data of citizen complaints in the resolution for the periods 2001 to 2005 to your adversary? In discovery, Your Honor? In discovery. I'm not aware of there being a claim that . . . Requested? I'm not sure that they did request it, Your Honor. I can't speak to that. That was not . . . that was not an issue that was presented on appeal. What the court did here was about the . . . The view was that the request was overly burdensome. It may have been, Your Honor. It may have been, but the evidence that they did present was strictly listings of lawsuits without backing any details of those lawsuits. Without any determination of whether or not investigations were inadequately done. The Cintron case was a settlement agreement between parties, not including the City of Hartford, actually. And what the parties agreed to was that they were going to complete these . . . They were striving to improve the citizen complaint procedure in that they wanted to get these complaints investigated within 30 days. Now that is just a day limit that the parties themselves agreed to. And when the court went . . . When the plaintiffs in that case went into court, they complained that they weren't being done within that time limit that the parties had originally agreed to. By the time the court looked at it, all of the backlog was cleared and we caught up on the investigations. But what the plaintiff failed to do, in contrast to the cases that are cited in my brief, where the Second Circuit has affirmed or reversed a grant of summary judgment, the plaintiffs in those cases presented evidence that there were investigations that were performed inadequately, that there was prior notice of a problem with the police officers, that despite the fact that there was notice of problems with these particular . . . What about the incident involving Clement Nurses? There was a citizen complaint filed in 2005, almost a year after the incident occurred, and the investigation was conducted and completed, and the officer was found to be cleared. The plaintiff's expert didn't . . . The effort made to visit Nurses' residence to interview possible witnesses or to take a statement from Nurse? Your Honor, the plaintiff failed to even pull and review the entire investigative file that the City of Hartford has on this matter, and Mr. Stothers . . . Can you answer my question, please? Your Honor, I can't say whether or not they did that, because I did not review the entire investigation myself. The complaint in Nursing, help me if I'm misremembering the record, it was filed in February 2005. That's correct. That was after the incident involving the plaintiff. That is correct, Your Honor. That would have been no notice . . . would serve as no effective notice to the City of Hartford. What about the absence of annual reports filed after 1994? Your Honor, we file reports. The City of Hartford prepares reports by virtue of its Police Department, the Chief of Police issues a listing, biannually, of all internal affairs investigations and the results and the names of the officers. So this particular report that is being referred to is dating back to a period from 1993 to 1994. It was a period that the report was reviewing that predated this incident by 11 to 12 years. So are you saying there are annual reports? There are reports that the Chief of Police provides to the Civilian Police Review Board and to the plaintiffs in the Cintron case that essentially provides the same information that is contained in that There were almost a dozen complaints against Officer Allen himself. No, Your Honor, those are use of force reports. So the City of Hartford requires . . . right, the City of Hartford requires that all officers who use any amount of force, any amount of force, aside from handcuffing, to document that use of force. Officer Allen did document that use of force whenever he had to use force. The plaintiff did not provide any analysis of those use of force reports, didn't pull the files that may have come with that, in other words, police reports, didn't analyze any of that. And in fact, in this particular case, Officer Allen, there's no question, reported and documented his use of force. It was reviewed. What period were the use of force incidents? I think it was 18 months prior. I think it was about that long, Your Honor. And the fact that the Chief of Police doesn't have . . . they're all documented. It's all within our record system. The use of force reports can simply be pulled and reviewed. And before they're filed, they are reviewed by a supervisor to determine whether or not . . . Are they available to the public? Yes, absolutely, Your Honor, absolutely. They have always been available to the public. If there's some privacy that needs to be redacted, then that's redacted. But otherwise, it is a public record. The entire investigative files of citizen complaints are public records for any . . . and in addition, Your Honor, what's telling here also is that there was no evidence on the scene that . . . or presented by the plaintiff that the plaintiff himself complained to anyone on the scene that there was a . . . there was a problem with the use of force. He himself never filed . . . his family never made any statement or report to the City of Hartford. They had no notice that there was an issue. He himself never filed a citizen complaint, which would have resulted in a full internal affairs investigation into this incident into the use of force, which includes, Your Honors, statements taken by witnesses, statements taken under oath by the officers. They're given their wine garden rights. They are advised this is a serious matter and that anything they say is actually being tape recorded. So all of that could have happened if there was some indication that maybe there was an issue. Mr. Outlaw never took or availed himself of that process and if, after the findings are reached by the Internal Affairs Division, there's a letter that goes out and if Mr. Allen . . . if Mr. Outlaw was unsatisfied with those findings and that report, there he could have taken in the letter he's advised that he can take an appeal to the Civilian Police Review Board, which is comprised of citizens as well as general members of the public and a couple of police officers and they review the investigation that is conducted by the Internal Affairs Division to determine if there was something that they didn't look at, if there was someone that they wanted to speak with, that they should have been spoken to. That just never occurred here and so the City of Hartford cannot be held to be on notice of a problem with Officer Allen when he documents his use of force as required, when there's no complaint against him that should send a red flag to the City of Hartford that he is a problem. He is out there on patrol and unfortunately he is in the thick of it and for that reason, as long as he documents it, it's reviewed by the officers, there's nothing that's being hidden here, everything is being looked at and reviewed and the officers are trained adequately. There's no... How do we deal with the 2003 Galinda's decision? The Galinda's decision, Your Honor, is not controlling but in addition, Your Honor, the court had before it testimony and evidence that this court, this district court, did not have. What the plaintiffs here have done is simply say, look at Galinda's and what the court found and interpreted, it's the evidence before it to have meant and that's enough. Well, Your Honor, on summary judgment, the plaintiff has to come forth... Looking just at Galinda's, it's looking at the list of lawsuits, originally, I guess, 98 to 2005, narrowed to 2001 to 2004, the Judge Burns' 2004 federal court order, use of force reports filed by Officer Allen, which you've just discussed, it's looking at all this together. That was actually a different Officer Allen, Your Honor. Yeah, that was a completely different Officer. But in that case, Your Honor, the court had before it evidence that raised a question of fact to it with regard to the Officer Allen involved in that case, a separate Officer Allen. And I cited to a case of Seigel versus City of Hartford in my brief where simply submitting registers, lists of lawsuits, doesn't provide the sort of evidence that a jury could reasonably conclude that the city had a widespread policy of indifference. There was no analysis by the expert or any evidence that would suggest that the lawsuits were sustained, that they had any merit, that any of the claims that had been filed were not withdrawn or dismissed on the merits. Your Honor, there was just not sufficient evidence presented on this particular case that would rise to the level to show that the city had some policy that it was condoning unconstitutional acts of its police officers. Thank you, Your Honor. Thank you, Your Honor. I'll be brief. I did want to respond to just a couple of things with respect to Clement Nurse. You know, there really are three levels of review in Hartford. When you use force, you're required to submit a form. It's a Form F60. There's an internal review of that use of force. Then the citizen has a right to complain and submit a complaint to the department that gets investigated as well. Then the third level of review is the Citizen Review Board. So it may well be that Internal Affairs is submitting a report from the police chief to the plaintiff's class in Cintron. They are not following their municipal code. Clement Nurse filed his complaint in February of 2005, but the incident occurred five weeks before Tylen Outlaw. And there are some eerie similarities to the incidents. The Clement Nurse incident, he's part of a joint task force with federal law enforcement. He's performing rear sentry duty, which is, as they're busting in through the front door, he's in the back so that the guy can't get out. Now, I'm not saying that Clement Nurse wasn't misbehaving or didn't have a bad record. Any of that. Any of that. But what we do know from deposition, and it was never disclosed to us until we requested it, obviously, but he broke the baton in half. This man used deadly force, and there's no report. At his trial, in this case, at his deposition, explaining his behavior with Mr. Outlaw, in that trial, I swung, I was not aiming for his head, I just accidentally missed. That's the same story with Clement Nurse. Clement Nurse would never have been believed, ever, given his record, that this officer did something like this and that it wasn't Clement Nurse's fault. And that's scary, because Tylen Outlaw is not Clement Nurse. And so we know that Officer Allen, in this phase of his career, was quick to go to the baton. And nobody said nothing. Nobody said nothing. My expert was frankly shocked at that. That phone call was, do you know what force you have to have to break a tempered baton? It's deadly force. So, did Mr. Outlaw file a complaint with the Civilian Review Board? Would that have done anything? They had such a backlog that they had to be ordered to hire eight full-time officers to clear up the backlog. And they didn't do it. One thing that's interesting, take a look- What percentage of civilian complaints related to excessive force, as opposed to the other parts of the complaint jurisdiction? No, because they don't keep records. They don't fulfill the requirement of an annual report. So we don't know that. What we do know- Did you seek that information in discovery? We asked for prior incidents with this officer, any complaints about officers in Hartford, and they sandbag it. And you can see that it's actually in the Joint Appendix, one of the follow-up discovery. And at some point, we had to get to trial. I'm just making sure- No, you did not seek a generalized- You did seek the ability to analyze all the citizen complaints for a particular period of time. That was my recollection. And we had big discovery battles for about two or three years. And so that was my recollection. But frankly, in the District of Connecticut, there's a requirement that that be disclosed regardless of whether you ask for it. Any relevant information is supposed to be turned over within a certain time frame. And that's all part of this. They don't follow court orders. They don't keep track of any of this. And it's for good reason, because if you keep track of it, well, then now you're setting yourself up possibly for a Monell claim. But that's what's ironic here. All they had to do is do a meaningful investigation. It doesn't have to be Colombo, but you have to do something, keep track of it, right? And then when an officer, Alan, does what he does, well, then you can take whatever disciplinary action you deem required under those circumstances. And we wouldn't be here, because I wouldn't be able to come in and say that there was this deliberate indifference, this custom on the part of this police department. And frankly, it speaks volumes that this officer is still on the active role in Hartford. That's a terrible message to send to the citizens that live in that community. Thank you.